SAM X. J. WU (SBN 183098)
JAMIE R. SCHLOSS (SBN 138404)
MIGUEL A. INIGUEZ (SBN 228365)
LAW OFFICES OF SAM X.J. WU, APC
8600 Utica Ave, Building 100
Rancho, Cucamonga, CA 91730
TEL:    (626) 588-2388
FAX:    (626) 656-2088
EMAIL:  victor@lawofficeofsamwu.com

Attorneys for Plaintiff
JUNPING MA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| JUNPING MA, an individual,<br><br>       Plaintiff,<br><br>v.<br><br>QING MING FANG, also known as MYLES FANG, an individual; LEI WANG FANG formerly known as LEI WANG, an individual; SERENA, LLC, a California Limited Liability Company; PARTHENIA UNIT, LLC, a California Limited Liability Company; WHITING DEVELOPMENT LLC, a California Limited Liability Company; All persons, claiming by, through or under such entities or persons; and all persons unknown, claiming any legal or equitable right, title, estate, lien or interest in the real property described in the complaint adverse to Defendant's title, or constituting any cloud on Defendant's title thereto;<br><br>       Defendants. | Case No.:<br><br>**COMPLAINT FOR**:<br><br>1.  ACTUAL VOIDABLE TRANSFER [California Civil Code §§ 3439.04, 3439.07, 3439.09] (Via Romero Transfer)<br><br>2.  ACTUAL VOIDABLE TRANSFER [California Civil Code §§ 3439.04, 3439.07, 3439.09] (Appalachian Transfer)<br><br>3.  ACTUAL VOIDABLE TRANSFER [California Civil Code §§ 3439.04, 3439.07, 3439.09] (Henrietta Transfer)<br><br>4.  ACTUAL VOIDABLE TRANSFER [California Civil Code §§ 3439.04, 3439.07, 3439.09] (Eisenhower Transfer)<br><br>5.  ACTUAL VOIDABLE TRANSFER [California Civil Code §§ 3439.04, 3439.07, 3439.09] (La Serena Transfer)<br><br>6.  ACTUAL VOIDABLE TRANSFER [California Civil Code §§ 3439.04, 3439.07, 3439.09] (Parthenia Transfer) |

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

7. ACTUAL VOIDABLE TRANSFER [California Civil Code §§ 3439.04, 3439.07, 3439.09] (Wilshire Transfer)

8. CONSTRUCTIVE VOIDABLE TRANSFER [California Civil Code §§ 3439.04, 3439.05, 3439.07, 3439.09] (La Serena Transfer)

9. CONSTRUCTIVE VOIDABLE TRANSFER [California Civil Code §§ 3439.04, 3439.05, 3439.07, 3439.09] (Wilshire Transfer)

10. COMMON LAW FRAUDULENT TRANSFER (All Transfers)

11. CONSPIRACY TO COMMIT FRAUD

Plaintiff JUNPING MA ("Plaintiff" or "MA") for her Complaint, hereby complains and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction under 28 U.S.C. § 1332(a)(2), because there is complete diversity of citizenship between the parties and an amount in controversy greater than $75,000.

2.     Venue within this District is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this Complaint occurred in this District and a substantial part of property that is the subject of this action is situated in this District.  This Court also has personal jurisdiction over each of the defendants.

## PARTIES

3.      Plaintiff MA is and was, at all time relevant herein, an individual and a citizen of the People's Republic of China ("PRC" or "China") domiciled at Room 33A, No. 272 Lujiang Road, Siming District, Xiamen City, China.

4.      On information and belief, Defendant QING MING FANG also known as MYLES FANG ("FANG") is an individual residing in the County of Orange, State of California domiciled at 4469 La Serena Dr., Yorba Linda, California 92886.  FANG renounced his Chinese citizenship and became a United States of America citizen on April 27, 2021.

5.      On information and belief, Defendant LEI WANG FANG formerly known as LEI WANG ("WANG") resides in the County of Orange, State of California and is domiciled at 4469 La Serena Dr., Yorba Linda, California 92886. WANG renounced her Chinese citizenship and became a United States of America citizen on June 23, 2015.

6.      On information and belief, Defendant FANG and Defendant WANG were and now are husband and wife, and owned, own and hold certain property rights and benefits as their community property as between themselves. They are collectively referred to as "The FANGS".

7.      On information and belief, WANG holds title to multiple assets in her own name while responsible ownership and control is actually held jointly between herself and her husband FANG, who directs her activities. These jointly held assets may be held in the name of either spouse but are actually jointly owned and controlled by The Fangs.  These jointly owned assets include ownership of Defendants SERENA, LLC, a California Limited Liability Company, PARTHENIA UNIT, LLC, a California Limited Liability Company, and WHITING DEVELOPMENT LLC, a California Limited Liability Company.

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

8.      On information and belief, Defendant SERENA, LLC ("SERENA") is a limited liability company organized under the laws of the State of California. On information and belief, Defendant WANG is ostensibly the sole member, manager, and CEO of SERENA and therefore controls SERENA.  SERENA is domiciled at 3000 E. BIRCH STREET, SUITE 102, BREA CA 92821.

9.      On information and belief, Defendant PARTHENIA UNIT, LLC ("PARTHENIA") is a limited liability company organized under the laws of the State of California.  On information and belief, Defendant WANG is the sole member, manager, and CEO of PARTHENIA and therefore controls PARTHENIA.  PARTHENIA is domiciled at 3000 E. BIRCH STREET, SUITE 102, BREA CA 92821.

10.     On information and belief, Defendant WHITING DEVELOPMENT LLC ("WHITING") is a limited liability company organized under the laws of the State of California.  On information and belief, WANG is the sole member, manager, and CEO of WHITING and therefore controls WHITING.  WANG is the authorized agent for service of WHITING which is domiciled at 1075 E IMPERIAL HWY STE 163, PLACENTIA CA 92870.

11.     The Defendants herein named as "all persons, claiming by, through or under such entities or persons; and all persons unknown, claiming any legal or equitable right, title, estate, lien or interest in the real property described in the complaint adverse to Defendant's title, or constituting any cloud on Defendant's title thereto" are unknown to Plaintiff. These unknown defendants, and each of them, claim some right, title, estate, lien, or interest in the hereinafter-described property or properties adverse to one or more of the named defendants' title and each of them constitute a cloud on one or more of the named defendants' title to that property or those properties.

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

## GENERAL ALLEGATIONS

### Nature of this Action

12.    The FANGS formerly operated multiple businesses in Xiamen City, China.  They seemed quite successful and owned multi-story office building such as the Fengrun Financial Building in Xiamen City.

13.    FANG is extremely tricky and held assets in numerous corporate entities.   FANG had a pattern and practice of transferring assets between various corporate entities which he and/or his wife WANG owned and controlled so as to hinder, delay and defraud creditors and so as render the corporate forms mere shams and shells through which he conducted business as an individual.

14.    WANG left China for the United States on or before on October 27, 2009.  While gone, she gave FANG a power of attorney enabling him to borrow money on her behalf and over her or the joint assets.  When she left China in 2009, she left without providing a forwarding address in her official public records.

15.    After WANG left China, she left FANG in control of her assets, which was confirmed by her issuing to him power of attorney over her assets.  Plaintiff relied on these powers of attorney and other representations when Plaintiff lent money to The FANGS and their companies. Defendants took money from many creditors in China by means of false statements, having no intention of repaying the money, or, having borrowed money, requesting more time to repay the loans or owed money; however, they had no intention of paying their debts and were on information and belief, already planning to trick, borrow or take as much money as they could then abscond to the United States.

16.    On or about July 6, 2018, FANG departed China secretly in violation of the China court and government restriction of departing from China and

**COMPLAINT**

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

suddenly, with the intent of concealing himself by hiding in the United States with the intention of avoiding service of process in China to hinder and delay his creditors and their efforts to collect debts, with the final goal of defrauding his creditors.   Like his wife, FANG left China without notifying his creditors and without leaving a forwarding address, taking that and other actions to conceal himself and his wife from Chinese based creditors.

17.   On information and belief, after their absconding from China, they secretly revisited China.

18.   FANG's act of absconding from China was part of a planned conspiracy or joint venture.   Individually and as aiders and abettors, The FANGS conspired and worked together to borrow money from Chinese citizens and businesses, and the abscond to America without repaying the loans or other extensions of credit and hiding ownership of the wrongfully taken money in various assets such as the real property referenced herein.

19.   As of 2018 and through the date of filing this lawsuit in 2022, The FANGS have absconded with Plaintiff's money to hide in United States, secreting themselves from their many Chinese creditors and enjoying the fruits of others money in the United States.

20.   Their companies went into default on debts owed to creditors and monies were owed to many people, on information and belief hundreds of claims were filed against defendants in China for repayment of debts.

21.   Plaintiff is a Creditor of The FANGS based on the loan of money on a November 11, 2013 written agreement (IOU). Pursuant to this agreement, Plaintiff lent RMB Fifty Million Yuan to Defendants (the FANGS and their Chinese based controlled companies listed in the IOU).   The IOU had no fixed date required for repayment and was considered payable on demand. The IOU

contains an arbitration clause requiring the parties arbitrate any dispute in Xiamen City, China.

22.   The FANGS requested that Plaintiff extend their time to pay the IOU and not place it into default. This request was granted.

23.   In September 2020, Plaintiff commenced an arbitration proceeding in China against Defendants.  Defendants appeared through their counsel in China which was reduced to an arbitration award dated November 23, 2020.

24.   Plaintiff has filed suit in the United States petitioning to enforce the arbitration award; however, Defendants have contested the validity of service and the award itself.  Therefore, any statute of limitations to pursue voidable transfers or hidden assets is tolled until the underlying liability becomes fixed by a final judgment in the United States.

25.   This action brought pursuant to California's Uniform Voidable Transaction Act ("UVTA") [Civil Code § 3439, *et seq*.] to set aside voidable transfers made by The FANGS to their related businesses, to each other, and to their relatives.

26.   "Creditor" means a person that has a claim. (Civil Code § 3439.01(c)).

27.   "Claim" means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.  (Civil Code § 3439.01(b)).

28.   On November 21, 2013, due to their business and operational needs, The FANGS, along with seven (7) Chinese business entities, collectively borrowed ¥50 million Yuan ("Chinese currency" or "RMB") in principal from Plaintiff (the "2013 Loan"), and provided Plaintiff with an IOU Agreement ("IOU"). Attached hereto as **Exhibit "A"** and incorporated herein by reference as if fully

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

7
**COMPLAINT**

set forth is a true and correct copy of the IOU Agreement along with a Certified English translation and Certificate of Translation.

29.    On the same day the IOU was signed, Plaintiff transferred ¥50 million Yuan to the account(s) designated by Defendants. Afterwards, Defendants provided a receipt and confirmed that the loan funds had been received.

30.    Defendants have breached the IOU by not paying any monies owed on it.  Plaintiff was forced to submit the matter for arbitration before the Xiamen Arbitration Commission pursuant to the terms of the IOU.

31.    The Xiamen Arbitration Commission ("XMAC") is an arbitration institution established in Xiamen, China.  (*See* Arbitration Rules of Xiamen Arbitration Commission ("XMAC Rules") (English Version) on the official website: http://www.xmac.org.cn/Home/Index/detail?ArticleId=243&ClassifyId=12).

### *The FANGS are Debtors as to Plaintiff's Monetary Claim.*

32.    "Debt" means liability on a claim and "Debtor" means a person that is liable on a claim.  (Civil Code § 3439.01(d)-(e)).

33.    On November 23, 2020, the XMAC Arbitration Court heard the case in Xiamen, China.   After taking evidence and following the examination procedure at the hearing, the XMAC Arbitration Court issued its Final Decision and Award (the "XMAC Award").   In the XMAC Award, XMAC awarded damages in favor of Plaintiff ("Petitioner" therein), and against the "Respondents" therein (including Defendants FANG and WANG) jointly and severally, as follows:

"(I)    The Respondents (including Defendants FANG and WANG) shall collectively repay ¥50 million Yuan in loan principal to Plaintiff within 10 days of being served with the Arbitration decision;

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

(II)   The Respondents (including Defendants FANG and WANG) shall collectively pay Plaintiff the loan interest (calculated based on ¥50 million Yuan with the monthly interest rate of 1.5%, starting on November 21, 2013 until the date when the principal and interest are fully settled by the Respondents, which is temporarily calculated up until July 20, 2020 in the amount of ¥60 million Yuan), within 10 days of being served with the Arbitration decision; and

(III)   The Respondents (including Defendants FANG and WANG) shall collectively pay Plaintiff ¥742,800 Yuan for the arbitration fee within 10 days of being served with the Arbitration decision."

Attached hereto as **Exhibit "B"** and incorporated herein by reference as if fully set forth is a true and correct copy of the XMAC Award along with a Certified English translation and Certificate of Translation.

34.   Accordingly, Plaintiff has a right to payment from Defendants FANG and WANG in the amount of at least ¥110,742,800 Yuan which is equivalent to $16,862,245.80 USD based on the April 2, 2021 currency exchange rate of 1 RMB to 0.15 USD.

35.   The XMAC Arbitration Court ruled that the XMAC Award was final and took immediate legal effect on the date of issuance which was November 23, 2020.

36.   The Federal Arbitration Act and the New York Convention governs the enforcement and confirmation of foreign arbitration awards, including the XMAC Award, which was issued in China – a New York Convention nation.  (9 U.S.C. §§ 201, 202).

37.   This Court has authority to confirm the XMAC Award under 9 U.S.C. § 207 and Plaintiff has filed a Petition to Confirm the XMAC Award with this

Court on March 9, 2021 (Case No. 8:21-cv-00441-JLS-ADS). Because The FANGS have contested the XMAC award, it is not yet final as a judgment.

### *Transfers of Property Made by The FANGS Undertaken With the Intent to Prevent Plaintiff From Reaching That Interest to Satisfy Her Claim.*

38.    During the six-year period immediately preceding the filing of this Complaint, The FANGS made transfers of their property, including money and real property located in the State of California, to the other defendants.  These transfers were made to or for the benefit of The FANGS and were not for the benefit of and did not benefit Plaintiff or any other creditor of The FANGS.

39.    Each of these transfers of property to a third person or entity by The FANGS were made with the intent to conceal their personally or indirectly owned assets (some of which were acquired with the proceeds from the 2013 Loan from Plaintiff) and to keep those assets out of the reach of their creditors including Plaintiff.

### *The Via Romero Transfer*

40.    On May 26, 2015, The FANGS were the owners of the real property situated in Orange County, California located at and commonly known as 5810 Via Romero #34, Yorba Linda, CA 92887, Assessor's Parcel Number ("APN"): 936-481-31 (the "Via Romero Property") as Husband and Wife as Community Property with Right of Survivorship.

41.    On information and belief, on May 26, 2015, The FANGS transferred the Via Romero Property to Defendant SERENA via Grant Deed (the "Via Romero Grant Deed") without receiving a reasonably equivalent value in exchange for the transfer and for the express purpose of preventing Plaintiff from reaching that interest in order to satisfy her claim.

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

42.    On information and belief, on June 9, 2015, The FANGS and SERENA caused the Via Romero Grant Deed to be recorded in the Official Records of the Orange County Recorder's Office (the "Via Romero Transfer").

43.    True and correct copies of the Via Romero Grant Deed and a Legal Description of the Via Romero Property are attached hereto as **Exhibit "C"**.

44.    Plaintiff did not discover the Via Romero Transfer until late February 2021 and, being based in China, not having a fixed judgment, and not being able to speak English, could not reasonably have discovered before that time. The transfer was only discovered after plaintiff hired an attorney in the United States in an effort to collect the XMAC Arbitration Award. Plaintiff has filed a Petition to Confirm the XMAC Award in Federal Court on March 9, 2021 (Case No. 8:21-cv-00441-JLS-ADS), taken as a first step towards enforcing her money judgment against The FANGS.

### ***The Appalachian Transfer***

45.    On May 26, 2015, The FANGS were the owners of the real property situated in Orange County, California located at and commonly known as 213 Appalachian Circle, Placentia, CA 92870, APN: 336-613-23 (the "Appalachian Property") as Husband and Wife as Community Property with Right of Survivorship.

46.    On information and belief, on May 26, 2015, The FANGS transferred the Appalachian Property to Defendant SERENA via Grant Deed (the "Appalachian Grant Deed") without receiving a reasonably equivalent value in exchange for the transfer and for the express purpose of preventing Plaintiff from reaching that interest in order to satisfy her claim.

47.     On information and belief, on June 9, 2015, The FANGS and SERENA caused the Appalachian Grant Deed to be recorded in the Official Records of the Orange County Recorder's Office (the "Appalachian Transfer").

48.     True and correct copies of the Appalachian Grant Deed and a Legal Description of the Appalachian Property are attached hereto as **Exhibit "D"**.

49.     Plaintiff did not discover the Appalachian Property Transfer until late February 2021 and, being based in China, not having a fixed judgment, and not being able to speak English, could not reasonably have discovered the transfer before that time. The transfer was only discovered after plaintiff hired an attorney in the United States in an effort to collect the XMAC Arbitration Award. Plaintiff has filed a Petition to Confirm the XMAC Award in Federal Court on March 9, 2021 (Case No. 8:21-cv-00441-JLS-ADS), taken as a first step towards enforcing her money judgment against The FANGS.

### *The Henrietta Transfer*

50.     On May 26, 2015, The FANGS were the owners of the real property situated in Orange County, California located at and commonly known as 1000 Henrietta Circle, Placentia, CA 92870, APN: 340-481-66 (the "Henrietta Property") as Husband and Wife as Community Property with Right of Survivorship.

51.     On information and belief, on May 26, 2015, The FANGS transferred the Henrietta Property to Defendant SERENA via Grant Deed (the "Henrietta Grant Deed") without receiving a reasonably equivalent value in exchange for the transfer and for the express purpose of preventing Plaintiff from reaching that interest in order to satisfy her claim.

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

52.   On information and belief, on June 9, 2015, The FANGS and SERENA caused the Henrietta Grant Deed to be recorded in the Official Records of the Orange County Recorder's Office (the "Henrietta Transfer").

53.   True and correct copies of the Henrietta Grant Deed and a Legal Description of the Henrietta Property are attached hereto as **Exhibit "E"**.

54.   Plaintiff did not discover the Henrietta Transfer until sometime in February 2021 and, being based in China, not having a fixed judgment, and not being able to speak English, could not reasonably have discovered the transfer before that time. The transfer was only discovered after plaintiff hired an attorney in the United States in an effort to collect the XMAC Arbitration Award. Plaintiff has filed a Petition to Confirm the XMAC Award in Federal Court on March 9, 2021 (Case No. 8:21-cv-00441-JLS-ADS), taken as a first step towards enforcing her money judgment against The FANGS.

### *The Eisenhower Transfer*

55.   On May 26, 2015, The FANGS were the owners of the real property situated in Orange County, California located at and commonly known as 4845 Eisenhower Court, Yorba Linda, CA 92886, APN: 334-441-57 (the "Eisenhower Property") as Husband and Wife as Community Property with Right of Survivorship.

56.   On information and belief, on May 26, 2015, The FANGS transferred the Eisenhower Property to Defendant SERENA via Grant Deed (the "Eisenhower Grant Deed") without receiving a reasonably equivalent value in exchange for the transfer and for the express purpose of preventing Plaintiff from reaching that interest in order to satisfy her claim.

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

57.    On information and belief, on June 9, 2015, The FANGS and SERENA caused the Eisenhower Grant Deed to be recorded in the Official Records of the Orange County Recorder's Office (the "Eisenhower Transfer").

58.    True and correct copies of the Eisenhower Grant Deed and a Legal Description of the Eisenhower Property are attached hereto as **Exhibit "F"**.

59.    Plaintiff did not discover the Eisenhower Transfer until sometime in February 2021 and, being based in China, not having a fixed judgment, and not being able to speak English, could not reasonably have discovered the transfer before that time. The transfer was only discovered after plaintiff hired an attorney in the United States in an effort to collect the XMAC Arbitration Award. Plaintiff has filed a Petition to Confirm the XMAC Award in Federal Court on March 9, 2021 (Case No. 8:21-cv-00441-JLS-ADS), taken as a first step towards enforcing her money judgment against The FANGS.

### *The La Serena Transfer*

60.    On February 14, 2018, The FANGS were the owners of the real property situated in Orange County, California located at and commonly known as 4469 La Serena Drive, Yorba Linda, CA 92886, APN: 334-361-34 (the "La Serena Property") as Husband and Wife as Community Property with Right of Survivorship.

61.    On information and belief, on February 14, 2018, The FANGS transferred the La Serena Property to WANG via Grant Deed and placed title to it in the name of "Lei Wang, a married woman as her sole and separate property" (the "La Serena Grant Deed"), without receiving a reasonably equivalent value in exchange for the transfer and for the express purpose of frustrating and hindering Plaintiff's or any other creditor's efforts to reach that interest in order to satisfy her claim.

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

62.     On information an belief, on February 22, 2018, The FANGS caused the La Serena Grant Deed to be recorded in the Official Records of the Orange County Recorder's Office (the "La Serena Transfer").

63.     True and correct copies of the La Serena Grant Deed and a Legal Description of the La Serena Property are attached hereto as **Exhibit "G"**.

64.     Plaintiff did not discover the La Serena Property Transfer until sometime in February 2021 and, being based in China, not having a fixed judgment, and not being able to speak English, could not reasonably have discovered the transfer before that time. The transfer was only discovered after plaintiff hired an attorney in the United States in an effort to collect the XMAC Arbitration Award. Plaintiff has filed a Petition to Confirm the XMAC Award in Federal Court on March 9, 2021 (Case No. 8:21-cv-00441-JLS-ADS), taken as a first step towards enforcing her money judgment against The FANGS.

### *The Parthenia Transfer*

65.     On December 7, 2015, The FANGS were the owners and in possession and control of financial assets, including but not limited to the 2013 Loan proceeds and other cash, which would have been subject to enforcement of, and could have been used to satisfy a portion of, Plaintiff's claim.

66.     On information and belief, on December 7, 2015, The FANGS caused some or all of those financial assets to be used to purchase the real property situated in Los Angeles County, California located at and commonly known as 15040 Parthenia Street, North Hills, CA 91343, APN: 2653-010-081 (the "Parthenia Property"), and placed title to it in the name of Defendant PARTHENIA (the "Parthenia Grant Deed"), without receiving a reasonably equivalent value in exchange for the transfer and for the express purpose of

preventing Plaintiff from reaching those financial assets in order to satisfy her claim.

67.    On information and belief, on December 15, 2015, The FANGS and PARTHENIA caused the Parthenia Grant Deed to be recorded in the Official Records of the Los Angeles County Recorder's Office (the "Parthenia Transfer").

68.    True and correct copies of the Parthenia Grant Deed and a Legal Description of the Parthenia Property are attached hereto as **Exhibit "H"**.

69.    Plaintiff did not discover the Parthenia Property Transfer until sometime in February 2021 and, being based in China, not having a fixed judgment, and not being able to speak English, could not reasonably have discovered the transfer before that time. The transfer was only discovered after plaintiff hired an attorney in the United States in an effort to collect the XMAC Arbitration Award. Plaintiff has filed a Petition to Confirm the XMAC Award in Federal Court on March 9, 2021 (Case No. 8:21-cv-00441-JLS-ADS), taken as a first step towards enforcing her money judgment against The FANGS.

### *The Wilshire Transfer*

70.    On December 14, 2020, The FANGS were the owners and in possession and control of financial assets, including but not limited to the 2013 Loan proceeds and other cash, which would have been subject to enforcement of, and could have been used to satisfy a portion of, Plaintiff's claim.

71.    On information and belief, on December 14, 2020, The FANGS caused some or all of those financial assets to be used to purchase the real property situated in Orange County, California located at and commonly known as 1909 E. Wilshire Avenue, Fullerton, CA 92831, APNs: 269-091-07 and 269-091-08 (the "Wilshire Property"), and placed title to it in the name of Defendant WHITING (the "Wilshire Grant Deed"), without receiving a reasonably equivalent

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

value in exchange for the transfer and for the express purpose of preventing Plaintiff from reaching those financial assets in order to satisfy her claim.

72.    On information and belief, on December 23, 2020, The FANGS and WHITING caused the Wilshire Grant Deed to be recorded in the Official Records of the Orange County Recorder's Office (the "Wilshire Transfer").

73.    True and correct copies of the Wilshire Grant Deed and a Legal Description of the Wilshire Property are attached hereto as **Exhibit "I"**.

74.    Plaintiff did not discover the Wilshire Transfer until sometime in February 2021 and, being based in China, not having a fixed judgment, and not being able to speak English, could not reasonably have discovered the transfer before that time. The transfer was only discovered after plaintiff hired an attorney in the United States in an effort to collect the XMAC Arbitration Award. Plaintiff has filed a Petition to Confirm the XMAC Award in Federal Court on March 9, 2021 (Case No. 8:21-cv-00441-JLS-ADS), taken as a first step towards enforcing her money judgment against The FANGS.


## **FIRST CLAIM FOR RELIEF**

**Avoidance of Actual Voidable Transfer**

**under California Civil Code §§ 3439.04, 3439.07, 3439.09**

**(Against Defendants FANG, WANG, and SERENA)**

**(Via Romero Transfer)**

75.    Plaintiff hereby incorporates by reference paragraphs 1 through 74 of this Complaint and re-alleges those paragraphs as though set forth in full.

76.    On or about June 9, 2015, Plaintiff had a right to payment from The FANGS based on the 2013 Loan and while Plaintiff was a Creditor of The FANGS as defined under California Civil Code § 3439.01, The FANGS

transferred property to Defendant SERENA, including, but not limited to, the Via Romero Property.

77.    The Via Romero Transfer was made by The FANGS with the actual intent to hinder, delay, or defraud their creditors, including Plaintiff.  A number of factors are present which show this actual intent:

(a)    the Via Romero Transfer was made to an insider in that the transfer was to SERENA, which Defendant WANG is the sole member, manager, and CEO of;

(b)    The FANGS retained possession or control of the Via Romero Property after the transfer via SERENA, which Defendant WANG is the sole member, manager, and CEO of;

(c)    the Via Romero Transfer was not disclosed to Plaintiff/concealed from Plaintiff in that title to the Via Romero Property was placed in the name of SERENA who was not a party to the 2013 Loan;

(d)    before the Via Romero Transfer, The FANGS had been threatened with suit (the XMAC Arbitration) due to their obligations under the 2013 Loan;

(e)    The FANGS removed and/or concealed personally owned assets via the Via Romero Transfer in that the asset was transferred to SERENA who was not a party to the 2013 Loan;

(f)    there was no exchange of reasonable equivalent value in that the Via Romero Transfer was made without consideration or only nominal consideration given in exchange for the transferred asset;

(g)    The FANGS transferred the Via Romero Property shortly after a substantial debt (the 2013 Loan) was incurred; and

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

(h)   the Via Romero Transfer was made for less than reasonably equivalent value at a time when The FANGS knew or should have known that it had unreasonably small capital remaining to pay its debts, including but not limited to their obligations pursuant to the 2013 loan, as they became due.

78.   Defendant SERENA did not take the Via Romero Transfer for a reasonably equivalent value and/or did not take said transfer in good faith. Specifically, SERENA (i) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the transfer was of assets personally owned by The FANGS because the transfer was identified as emanating from them; (ii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested the value, if any, provided by it in exchange for said transfer conferred no or less than reasonably equivalent value; and (iii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the value, if any, provided by it in exchange for said transfer was not for the benefit of The FANGS' creditors.   Defendant SERENA possessed such knowledge by virtue of its status as an entity which Defendant WANG is the sole member, manager, and CEO of.   As a result of this status, it had notice of or reasonably should have been put on notice of The FANGS' actual fraudulent intent in transferring the Via Romero Property.

79.   Plaintiff did not discover the Via Romero Transfer until late February 2021 because, at all relevant times, The FANGS concealed from one or more of their creditors, including Plaintiff, that they had made the Via Romero Transfer with the intent to hinder, delay, or defraud one or more of such creditors. Because at all relevant times, The FANGS had control over their business and financial records, the fraudulent transfer alleged in this claim for relief could not

reasonably have been discovered by Plaintiff sooner than one year prior to the filing of this Complaint.

80.   Plaintiff has been injured by the Via Romero Transfer because said transfer put beyond Plaintiff's reach, property that would have been able to be subject to the payment of The FANGS' debt.  On information and belief, if the Via Romero Transfer were set aside, the value of the Via Romero Property would support a net recovery for Plaintiff and thus, Plaintiff has been injured by the fraudulent transfer alleged in this claim in the amount of that net recovery since she has been deprived of the ability to satisfy her monetary claim by collecting/attaching/executing on the fraudulently transferred asset.

81.   Plaintiff has also been forced to incur legal fees and costs in filing this action to avoid said transfer.  The fraudulent transfer alleged in this claim for relief was a substantial factor in causing Plaintiff to incur said legal fees and costs.  Accordingly, Plaintiff is entitled to an award of attorneys' fees in the action confirming her arbitral award as well as an award of her attorneys' fees and costs in the instant action.

82.   On information and belief, Defendant SERENA, as the transferee of the fraudulently transferred asset, is a constructive trustee of the fraudulently transferred asset, along with the proceeds therefrom, and is charged with maintaining the fraudulently transferred asset, along with the proceeds therefrom, for the benefits of the creditors of The FANGS, including Plaintiff.

83.   Defendant SERENA, as the transferee and constructive trustee of the fraudulently transferred asset, must be enjoined from selling, encumbering, or disposing of the fraudulently transferred asset.

84.   The Via Romero Transfer must therefore be set aside and voided to the extent necessary to satisfy Plaintiff's claim, plus interest, and attorneys' fees and costs associated with the instant action.

**COMPLAINT**

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

85.     The acts of Defendants FANG, WANG, and SERENA as described herein are fraudulent, oppressive, malicious, and in conscious disregard of the rights of Plaintiff, designed to harm Plaintiff, all for their own personal financial gain.   As such, Plaintiff is entitled to an award of exemplary and punitive damages to make an example of and punish the transferors and transferee of the voidable transferred asset in an amount determined to be just.

### SECOND CLAIM FOR RELIEF

**Avoidance of Actual Voidable Transfer**

**under California Civil Code §§ 3439.04, 3439.07, 3439.09**

**(Against Defendants FANG, WANG, and SERENA)**

**(Appalachian Transfer)**

86.     Plaintiff hereby incorporates by reference paragraphs 1 through 85 of this Complaint and re-alleges those paragraphs as though set forth in full.

87.     On or about June 9, 2015, Plaintiff had a right to payment from The FANGS based on the 2013 Loan and while Plaintiff was a Creditor of The FANGS as defined under California Civil Code § 3439.01, The FANGS transferred property to Defendant SERENA, including, but not limited to, the Appalachian Property.

88.     The Appalachian Transfer was made by The FANGS with the actual intent to hinder, delay, or defraud their creditors, including Plaintiff.  A number of factors are present which show this actual intent:

(a)     the Appalachian Transfer was made to an insider in that the transfer was to SERENA, which Defendant WANG is the sole member, manager, and CEO of;

(b)     The FANGS retained possession or control of the Appalachian Property after the transfer via SERENA, which Defendant WANG is the sole member, manager, and CEO of;

(c) the Appalachian Transfer was not disclosed to Plaintiff/concealed from Plaintiff in that title to the Appalachian Property was placed in the name of SERENA who was not a party to the 2013 Loan;

(d) before the Appalachian Transfer, The FANGS had been threatened with suit (the XMAC Arbitration) due to their obligations under the 2013 Loan;

(e) The FANGS removed and/or concealed personally owned assets via the Appalachian Transfer in that the asset was transferred to SERENA who was not a party to the 2013 Loan;

(f) there was no exchange of reasonable equivalent value in that the Appalachian Transfer was made without consideration or only nominal consideration given in exchange for the transferred asset;

(g) The FANGS transferred the Appalachian Property shortly after a substantial debt (the 2013 Loan) was incurred; and

(h) the Appalachian Transfer was made for less than reasonably equivalent value at a time when The FANGS knew or should have known that it had unreasonably small capital remaining to pay its debts, including but not limited to their obligations pursuant to the 2013 loan, as they became due.

89. Defendant SERENA did not take the Appalachian Transfer for a reasonably equivalent value and/or did not take said transfer in good faith. Specifically, SERENA (i) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the transfer was of assets personally owned by The FANGS because the transfer was identified as emanating from them; (ii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested the value, if any, provided by it in exchange for said transfer

conferred no or less than reasonably equivalent value; and (iii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the value, if any, provided by it in exchange for said transfer was not for the benefit of The FANGS' creditors.  Defendant SERENA possessed such knowledge by virtue of its status as an entity which Defendant WANG is the sole member, manager, and CEO of.  As a result of this status, it had notice of or reasonably should have been put on notice of The FANGS' actual fraudulent intent in transferring the Appalachian Property.

90.   Plaintiff did not discover the Appalachian Transfer until late February 2021 because, at all relevant times, The FANGS concealed from one or more of their creditors, including Plaintiff, that they had made the Appalachian Transfer with the intent to hinder, delay, or defraud one or more of such creditors. Because at all relevant times, The FANGS had control over their business and financial records, the fraudulent transfer alleged in this claim for relief could not reasonably have been discovered by Plaintiff sooner than one year prior to the filing of this Complaint.

91.   Plaintiff has been injured by the Appalachian Transfer because said transfer put beyond Plaintiff's reach, property that would have been able to be subject to the payment of The FANGS' debt.  On information and belief, if the Appalachian Transfer were set aside, the value of the Appalachian Property would support a net recovery for Plaintiff and thus, Plaintiff has been injured by the fraudulent transfer alleged in this claim in the amount of that net recovery since she has been deprived of the ability to satisfy her monetary claim by collecting/attaching/executing on the fraudulently transferred asset.

92.   Plaintiff has also been forced to incur legal fees and costs in filing this action to avoid said transfer.  The fraudulent transfer alleged in this claim for relief was a substantial factor in causing Plaintiff to incur said legal fees and

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

costs.   Accordingly, Plaintiff is entitled to an award of attorneys' fees in the action confirming her arbitral award as well as an award of her attorneys' fees and costs in the instant action.

93.    On information and belief, Defendant SERENA, as the transferee of the fraudulently transferred asset, is a constructive trustee of the fraudulently transferred asset, along with the proceeds therefrom, and is charged with maintaining the fraudulently transferred asset, along with the proceeds therefrom, for the benefits of the creditors of The FANGS, including Plaintiff.

94.    Defendant SERENA, as the transferee and constructive trustee of the fraudulently transferred asset, must be enjoined from selling, encumbering, or disposing of the fraudulently transferred asset.

95.    The Appalachian Transfer must therefore be set aside and voided to the extent necessary to satisfy Plaintiff's claim, plus interest, and attorneys' fees and costs associated with the instant action.

96.    The acts of The FANGS and SERENA as described herein are fraudulent, oppressive, malicious, and in conscious disregard of the rights of Plaintiff, designed to harm Plaintiff, all for their own personal financial gain.  As such, Plaintiff is entitled to an award of exemplary and punitive damages to make an example of and punish the transferors and transferee of the fraudulently transferred asset in an amount determined to be just.

### THIRD CLAIM FOR RELIEF

**Avoidance of Actual Voidable Transfer**

**under California Civil Code §§ 3439.04, 3439.07, 3439.09**

**(Against Defendants FANG, WANG, and SERENA)**

**(Henrietta Transfer)**

97.    Plaintiff hereby incorporates by reference paragraphs 1 through 96 of this Complaint and re-alleges those paragraphs as though set forth in full.

98.    On or about June 9, 2015, Plaintiff had a right to payment from The FANGS based on the 2013 Loan and while Plaintiff was a Creditor of The FANGS as defined under California Civil Code § 3439.01, The FANGS transferred property to Defendant SERENA, including, but not limited to, the Henrietta Property.

99.    The Henrietta Transfer was made by The FANGS with the actual intent to hinder, delay, or defraud their creditors, including Plaintiff.  A number of factors are present which show this actual intent:

(a)    the Henrietta Transfer was made to an insider in that the transfer was to SERENA, which Defendant WANG is the sole member, manager, and CEO of;

(b)    The FANGS retained possession or control of the Henrietta Property after the transfer via SERENA, which Defendant WANG is the sole member, manager, and CEO of;

(c)    the Appalachian Transfer was not disclosed to Plaintiff/concealed from Plaintiff in that title to the Henrietta Property was placed in the name of SERENA who was not a party to the 2013 Loan;

(d)    before the Henrietta Transfer, The FANGS had been threatened with suit (the XMAC Arbitration) due to their obligations under the 2013 Loan;

(e)    The FANGS removed and/or concealed personally owned assets via the Henrietta Transfer in that the asset was transferred to SERENA who was not a party to the 2013 Loan;

(f)    there was no exchange of reasonable equivalent value in that the Henrietta Transfer was made without consideration or only nominal consideration given in exchange for the transferred asset;

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

(g)   The FANGS transferred the Henrietta Property shortly after a substantial debt (the 2013 Loan) was incurred; and

(h)   the Henrietta Transfer was made for less than reasonably equivalent value at a time when The FANGS knew or should have known that it had unreasonably small capital remaining to pay its debts, including but not limited to their obligations pursuant to the 2013 loan, as they became due.

100.  Defendant SERENA did not take the Henrietta Transfer for a reasonably equivalent value and/or did not take said transfer in good faith. Specifically, SERENA (i) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the transfer was of assets personally owned by The FANGS because the transfer was identified as emanating from them; (ii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested the value, if any, provided by it in exchange for said transfer conferred no or less than reasonably equivalent value; and (iii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the value, if any, provided by it in exchange for said transfer was not for the benefit of The FANGS' creditors.  Defendant SERENA possessed such knowledge by virtue of its status as an entity which Defendant WANG is the sole member, manager, and CEO of.  As a result of this status, it had notice of or reasonably should have been put on notice of The FANGS' actual fraudulent intent in transferring the Henrietta Property.

101.  Plaintiff did not discover the Henrietta Transfer until late February 2021 because, at all relevant times, The FANGS concealed from one or more of their creditors, including Plaintiff, that they had made the Henrietta Transfer with the intent to hinder, delay, or defraud one or more of such creditors.  Because at all relevant times, The FANGS had control over their business and financial

records, the fraudulent transfer alleged in this claim for relief could not reasonably have been discovered by Plaintiff sooner than one year prior to the filing of this Complaint.

102. Plaintiff has been injured by the Henrietta Transfer because said transfer put beyond Plaintiff's reach, property that would have been able to be subject to the payment of The FANGS' debt.  On information and belief, if the Henrietta Transfer were set aside, the value of the Henrietta Property would support a net recovery for Plaintiff and thus, Plaintiff has been injured by the fraudulent transfer alleged in this claim in the amount of that net recovery since she has been deprived of the ability to satisfy her monetary claim by collecting/attaching/executing on the fraudulently transferred asset.

103. Plaintiff has also been forced to incur legal fees and costs in filing this action to avoid said transfer.  The fraudulent transfer alleged in this claim for relief was a substantial factor in causing Plaintiff to incur said legal fees and costs.  Accordingly, Plaintiff is entitled to an award of attorneys' fees in the action confirming her arbitral award as well as an award of her attorneys' fees and costs in the instant action.

104. On information and belief, Defendant SERENA, as the transferee of the fraudulently transferred asset, is a constructive trustee of the fraudulently transferred asset, along with the proceeds therefrom, and is charged with maintaining the fraudulently transferred asset, along with the proceeds therefrom, for the benefits of the creditors of The FANGS, including Plaintiff.

105. Defendant SERENA, as the transferee and constructive trustee of the fraudulently transferred asset, must be enjoined from selling, encumbering, or disposing of the fraudulently transferred asset.

106.  The Henrietta Transfer must therefore be set aside and voided to the extent necessary to satisfy Plaintiff's claim, plus interest, and attorneys' fees and costs associated with the instant action.

107.  The acts of The FANGS and SERENA as described herein are fraudulent, oppressive, malicious, and in conscious disregard of the rights of Plaintiff, designed to harm Plaintiff, all for their own personal financial gain.  As such, Plaintiff is entitled to an award of exemplary and punitive damages to make an example of and punish the transferors and transferee of the fraudulently transferred asset in an amount determined to be just.

## FOURTH CLAIM FOR RELIEF

### Avoidance of Actual Voidable Transfer
### under California Civil Code §§ 3439.04, 3439.07, 3439.09
### (Against Defendants FANG, WANG, and SERENA)
### (Eisenhower Transfer)

108.  Plaintiff hereby incorporates by reference paragraphs 1 through 107 of this Complaint and re-alleges those paragraphs as though set forth in full.

109.  On or about June 9, 2015, Plaintiff had a right to payment from The FANGS based on the 2013 Loan and while Plaintiff was a Creditor of The FANGS as defined under California Civil Code § 3439.01, The FANGS transferred property to Defendant SERENA, including, but not limited to, the Eisenhower Property.

110.  The Eisenhower Transfer was made by The FANGS with the actual intent to hinder, delay, or defraud their creditors, including Plaintiff.  A number of factors are present which show this actual intent:

(a)   the Eisenhower Transfer was made to an insider in that the transfer was to SERENA, which Defendant WANG is the sole member, manager, and CEO of;

**COMPLAINT**

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

(b)     The FANGS retained possession or control of the Eisenhower Property after the transfer via SERENA, which Defendant WANG is the sole member, manager, and CEO of;

(c)     the Eisenhower Transfer was not disclosed to Plaintiff/concealed from Plaintiff in that title to the Eisenhower Property was placed in the name of SERENA who was not a party to the 2013 Loan;

(d)     before the Eisenhower Transfer, The FANGS had been threatened with suit (the XMAC Arbitration) due to their obligations under the 2013 Loan;

(e)     The FANGS removed and/or concealed personally owned assets via the Eisenhower Transfer in that the asset was transferred to SERENA who was not a party to the 2013 Loan;

(f)      there was no exchange of reasonable equivalent value in that the Eisenhower Transfer was made without consideration or only nominal consideration given in exchange for the transferred asset;

(g)     The FANGS transferred the Eisenhower Property shortly after a substantial debt (the 2013 Loan) was incurred; and

(h)     the Eisenhower Transfer was made for less than reasonably equivalent value at a time when The FANGS knew or should have known that it had unreasonably small capital remaining to pay its debts, including but not limited to their obligations pursuant to the 2013 loan, as they became due.

111.   Defendant SERENA did not take the Eisenhower Transfer for a reasonably equivalent value and/or did not take said transfer in good faith. Specifically, SERENA (i) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the transfer was of assets personally

owned by The FANGS because the transfer was identified as emanating from them; (ii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested the value, if any, provided by it in exchange for said transfer conferred no or less than reasonably equivalent value; and (iii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the value, if any, provided by it in exchange for said transfer was not for the benefit of The FANGS' creditors.   Defendant SERENA possessed such knowledge by virtue of its status as an entity which Defendant WANG is the sole member, manager, and CEO of.   As a result of this status, it had notice of or reasonably should have been put on notice of The FANGS' actual fraudulent intent in transferring the Eisenhower Property.

112.   Plaintiff did not discover the Eisenhower Transfer until late February 2021 because, at all relevant times, The FANGS concealed from one or more of their creditors, including Plaintiff, that they had made the Eisenhower Transfer with the intent to hinder, delay, or defraud one or more of such creditors. Because at all relevant times, The FANGS had control over their business and financial records, the fraudulent transfer alleged in this claim for relief could not reasonably have been discovered by Plaintiff sooner than one year prior to the filing of this Complaint.

113.   Plaintiff has been injured by the Eisenhower Transfer because said transfer put beyond Plaintiff's reach, property that would have been able to be subject to the payment of The FANGS' debt.   On information and belief, if the Eisenhower Transfer were set aside, the value of the Eisenhower Property would support a net recovery for Plaintiff and thus, Plaintiff has been injured by the fraudulent transfer alleged in this claim in the amount of that net recovery since she has been deprived of the ability to satisfy her monetary claim by collecting/attaching/executing on the fraudulently transferred asset.

114.  Plaintiff has also been forced to incur legal fees and costs in filing this action to avoid said transfer.  The fraudulent transfer alleged in this claim for relief was a substantial factor in causing Plaintiff to incur said legal fees and costs.  Accordingly, Plaintiff is entitled to an award of attorneys' fees in the action confirming her arbitral award as well as an award of her attorneys' fees and costs in the instant action.

115.  On information and belief, Defendant SERENA, as the transferee of the fraudulently transferred asset, is a constructive trustee of the fraudulently transferred asset, along with the proceeds therefrom, and is charged with maintaining the fraudulently transferred asset, along with the proceeds therefrom, for the benefits of the creditors of The FANGS, including Plaintiff.

116.  Defendant SERENA, as the transferee and constructive trustee of the fraudulently transferred asset, must be enjoined from selling, encumbering, or disposing of the fraudulently transferred asset.

117.  The Eisenhower Transfer must therefore be set aside and voided to the extent necessary to satisfy Plaintiff's claim, plus interest, and attorneys' fees and costs associated with the instant action.

118.  The acts of The FANGS and SERENA as described herein are fraudulent, oppressive, malicious, and in conscious disregard of the rights of Plaintiff, designed to harm Plaintiff, all for their own personal financial gain.  As such, Plaintiff is entitled to an award of exemplary and punitive damages to make an example of and punish the transferors and transferee of the fraudulently transferred asset in an amount determined to be just.

### **FIFTH CLAIM FOR RELIEF**

**Avoidance of Actual Voidable Transfer**

**under California Civil Code §§ 3439.04, 3439.07, 3439.09**

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

**(Against Defendants FANG and WANG)**

**(La Serena Transfer)**

119.   Plaintiff hereby incorporates by reference paragraphs 1 through 118 of this Complaint and re-alleges those paragraphs as though set forth in full.

120.   On or about February 22, 2018, Plaintiff had a right to payment from The FANGS based on the 2013 Loan and while Plaintiff was a Creditor of The FANGS as defined under California Civil Code § 3439.01, The FANGS transferred property to Defendant WANG "as her sole and separate property", including, but not limited to, the La Serena Property.

121.   The La Serena Transfer was made by The FANGS with the actual intent to hinder, delay, or defraud their creditors, including Plaintiff.  A number of factors are present which show this actual intent:

(a)   the La Serena Transfer was made to an insider in that the transfer was to WANG "as her sole and separate property";

(b)   The FANGS retained possession or control of the La Serena Property after the transfer via WANG who is and at all times relevant herein was married to FANG;

(c)   the La Serena Transfer was not disclosed to Plaintiff/concealed from Plaintiff;

(d)   before the La Serena Transfer, The FANGS had been threatened with suit (the XMAC Arbitration) due to their obligations under the 2013 Loan;

(e)   FANG removed and/or concealed personally owned assets via the La Serena Transfer in that the asset was transferred to WANG "as her sole and separate property";

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

(f)     there was no exchange of reasonable equivalent value in that the La Serena Transfer was made without consideration or only nominal consideration given in exchange for the transferred asset;

(g)     the La Serena Transfer occurred at a time a substantial debt (the 2013 Loan) was incurred; and

(h)     the La Serena Transfer was made for less than reasonably equivalent value at a time when The FANGS knew or should have known that it had unreasonably small capital remaining to pay its debts, including but not limited to their obligations pursuant to the 2013 loan, as they became due.

122.  Defendant WANG did not take the La Serena Transfer for a reasonably equivalent value and/or did not take said transfer in good faith. Specifically, WANG (i) knew or consciously or recklessly chose to ignore facts known to her that strongly suggested that the transfer was of assets personally owned by The FANGS "as community property" because the transfer was identified as emanating from them; (ii) knew or consciously or recklessly chose to ignore facts known to her that strongly suggested the value, if any, provided by her in exchange for said transfer conferred no or less than reasonably equivalent value; and (iii) knew or consciously or recklessly chose to ignore facts known to her that strongly suggested that the value, if any, provided by her in exchange for said transfer was not for the benefit of The FANGS' creditors. Defendant WANG possessed such knowledge by virtue of her ownership of the asset "as community property" prior to the transfer.  As a result, she had notice of or reasonably should have been put on notice of The FANGS' actual fraudulent intent in transferring the La Serena Property.

123.  Plaintiff did not discover the La Serena Transfer until late February 2021 because, at all relevant times, The FANGS concealed from one or more of

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

their creditors, including Plaintiff, that they had made the La Serena Transfer with the intent to hinder, delay, or defraud one or more of such creditors. Because at all relevant times, The FANGS had control over their business and financial records, the fraudulent transfer alleged in this claim for relief could not reasonably have been discovered by Plaintiff sooner than one year prior to the filing of this Complaint.

124.   Plaintiff has been injured by the La Serena Transfer because said transfer put beyond Plaintiff's reach, property that would have been able to be subject to the payment of The FANGS' community debt.   On information and belief, if the La Serena Transfer were set aside, the value of the La Serena Property would support a net recovery for Plaintiff and thus, Plaintiff has been injured by the fraudulent transfer alleged in this claim in the amount of that net recovery since she has been deprived of the ability to satisfy her monetary claim by collecting/attaching/executing on the fraudulently transferred asset.

125.   Plaintiff has also been forced to incur legal fees and costs in filing this action to avoid said transfer.   The fraudulent transfer alleged in this claim for relief was a substantial factor in causing Plaintiff to incur said legal fees and costs.   Accordingly, Plaintiff is entitled to an award of attorneys' fees in the action confirming her arbitral award as well as an award of her attorneys' fees and costs in the instant action.

126.   On information and belief, Defendant WANG, as the transferee of the fraudulently transferred asset, is a constructive trustee of the fraudulently transferred asset, along with the proceeds therefrom, and is charged with maintaining the fraudulently transferred asset, along with the proceeds therefrom, for the benefits of the creditors of The FANGS, including Plaintiff.

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

127.  Defendant WANG, as the transferee and constructive trustee of the fraudulently transferred asset, must be enjoined from selling, encumbering, or disposing of the fraudulently transferred asset.

128.  The La Serena Transfer must therefore be set aside and voided to the extent necessary to satisfy Plaintiff's claim, plus interest, and attorneys' fees and costs associated with the instant action.

129.  The acts of The FANGS as described herein are fraudulent, oppressive, malicious, and in conscious disregard of the rights of Plaintiff, designed to harm Plaintiff, all for their own personal financial gain.  As such, Plaintiff is entitled to an award of exemplary and punitive damages to make an example of and punish the transferors and transferee of the fraudulently transferred asset in an amount determined to be just.

## SIXTH CLAIM FOR RELIEF

### Avoidance of Actual Voidable Transfer
### under California Civil Code §§ 3439.04, 3439.07, 3439.09
### (Against Defendants FANG, WANG, and PARTHENIA)
### (Parthenia Transfer)

130.  Plaintiff hereby incorporates by reference paragraphs 1 through 129 of this Complaint and re-alleges those paragraphs as though set forth in full.

131.  On information and belief, on or about December 7, 2015, Plaintiff had a right to payment from The FANGS based on the 2013 Loan and while Plaintiff was a Creditor of The FANGS as defined under California Civil Code § 3439.01, The FANGS transferred personal financial assets—including but not limited to the 2013 Loan proceeds and other cash, which would have been subject to enforcement of, and could have been used to satisfy a portion of, Plaintiff's claim—to PARTHENIA.

132. On information and belief, on or about December 7, 2015, The FANGS caused some or all of those financial assets to be used to purchase the Parthenia Property and caused title to it to be placed in the name of PARTHENIA, without receiving a reasonably equivalent value in exchange for the transfer and for the express purpose of preventing Plaintiff from reaching those financial assets in order to satisfy her claim, and thereafter caused the deed related to the transfer to be recorded on December 15, 2015.

133. The Parthenia Transfer was made by The FANGS with the actual intent to hinder, delay, or defraud their creditors, including Plaintiff.  A number of factors are present which show this actual intent:

(a)   the Parthenia Transfer was made to an insider in that the transfer was to PARTHENIA, which Defendant WANG is the sole member, manager, and CEO of;

(b)   The FANGS retained possession or control of the Parthenia Property after the transfer via PARTHENIA, which Defendant WANG is the sole member, manager, and CEO of;

(c)   the Parthenia Transfer was not disclosed to Plaintiff/concealed from Plaintiff in that title to the Parthenia Property was placed in the name of PARTHENIA who was not a party to the 2013 Loan;

(d)   before the Parthenia Transfer, The FANGS had been threatened with suit (the XMAC Arbitration) due to their obligations under the 2013 Loan;

(e)   The FANGS removed and/or concealed personally owned assets via the Parthenia Transfer in that the assets were transferred to PARTHENIA who was not a party to the 2013 Loan;

(f)     there was no exchange of reasonable equivalent value in that the Parthenia Transfer was made without consideration or only nominal consideration given in exchange for the transferred assets;

(g)     the Parthenia Transfer occurred at a time a substantial debt (the 2013 Loan) was incurred; and

(h)     the Parthenia Transfer was made for less than reasonably equivalent value at a time when The FANGS knew or should have known that it had unreasonably small capital remaining to pay its debts, including but not limited to their obligations pursuant to the 2013 loan, as they became due.

134.   Defendant PARTHENIA did not take the Parthenia Transfer for a reasonably equivalent value and/or did not take said transfer in good faith. Specifically, PARTHENIA (i) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the transfer was of assets personally owned by The FANGS because the transfer was identified as emanating from them; (ii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested the value, if any, provided by it in exchange for said transfer conferred no or less than reasonably equivalent value; and (iii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the value, if any, provided by it in exchange for said transfer was not for the benefit of The FANGS' creditors.   Defendant PARTHENIA possessed such knowledge by virtue of its status as an entity which Defendant WANG is the sole member, manager, and CEO of.  As a result of this status, it had notice of or reasonably should have been put on notice of The FANGS' actual fraudulent intent in transferring the Parthenia Property.

135.   Plaintiff did not discover the Parthenia Transfer until late February 2021 because, at all relevant times, The FANGS concealed from one or more of

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

their creditors, including Plaintiff, that they had made the Parthenia Transfer with the intent to hinder, delay, or defraud one or more of such creditors. Because at all relevant times, The FANGS had control over their business and financial records, the fraudulent transfer alleged in this claim for relief could not reasonably have been discovered by Plaintiff sooner than one year prior to the filing of this Complaint.

136. Plaintiff has been injured by the Parthenia Transfer because said transfer put beyond Plaintiff's reach, property that would have been able to be subject to the payment of The FANGS' debt. Upon information and belief, if the Parthenia Transfer were set aside, the value of the Parthenia Property would support a net recovery for Plaintiff and thus, Plaintiff has been injured by the fraudulent transfer alleged in this claim in the amount of that net recovery since she has been deprived of the ability to satisfy her monetary claim by collecting/attaching/executing on the fraudulently transferred asset.

137. Plaintiff has also been forced to incur legal fees and costs in filing this action to avoid said transfer. The fraudulent transfer alleged in this claim for relief was a substantial factor in causing Plaintiff to incur said legal fees and costs. Accordingly, Plaintiff is entitled to an award of attorneys' fees in the action confirming her arbitral award as well as an award of her attorneys' fees and costs in the instant action.

138. On information and belief, Defendant PARTHENIA, as the transferee of the fraudulently transferred asset, is a constructive trustee of the fraudulently transferred asset, along with the proceeds therefrom, and is charged with maintaining the fraudulently transferred asset, along with the proceeds therefrom, for the benefits of the creditors of The FANGS, including Plaintiff.

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

139.  Defendant PARTHENIA, as the transferee and constructive trustee of the fraudulently transferred asset, must be enjoined from selling, encumbering, or disposing of the fraudulently transferred asset.

140.  The Parthenia Transfer must therefore be set aside and voided to the extent necessary to satisfy Plaintiff's claim, plus interest, and attorneys' fees and costs associated with the instant action.

141.  The acts of The FANGS and PARTHENIA as described herein are fraudulent, oppressive, malicious, and in conscious disregard of the rights of Plaintiff, designed to harm Plaintiff, all for their own personal financial gain.  As such, Plaintiff is entitled to an award of exemplary and punitive damages to make an example of and punish the transferors and transferee of the fraudulently transferred asset in an amount determined to be just.

## SEVENTH CLAIM FOR RELIEF

### Avoidance of Actual Voidable Transfer
### under California Civil Code §§ 3439.04, 3439.07, 3439.09
### (Against Defendants FANG, WANG, and WHITING)
### (Wilshire Transfer)

142.  Plaintiff hereby incorporates by reference paragraphs 1 through 141 of this Complaint and re-alleges those paragraphs as though set forth in full.

143.  On information and belief, on or about December 14, 2020, Plaintiff had a right to payment from The FANGS based on the 2013 Loan and while Plaintiff was a Creditor of The FANGS as defined under California Civil Code § 3439.01, The FANGS transferred personal financial assets—including but not limited to the 2013 Loan proceeds and other cash, which would have been subject to enforcement of, and could have been used to satisfy a portion of, Plaintiff's claim—to WHITING.

144. On information and belief, on or about December 14, 2020, The FANGS caused some or all of those financial assets to be used to purchase the Wilshire Property and caused title to it to be placed in the name of WHITING, without receiving a reasonably equivalent value in exchange for the transfer and for the express purpose of preventing Plaintiff from reaching those financial assets in order to satisfy her claim, and thereafter caused the deed related to the transfer to be recorded on December 23, 2020.

145. The Wilshire Transfer was made by The FANGS with the actual intent to hinder, delay, or defraud their creditors, including Plaintiff.  A number of factors are present which show this actual intent:

(a)    the Wilshire Transfer was made to an insider in that the transfer was to WHITING, which Defendant WANG is the sole member, manager, and CEO of;

(b)    The FANGS retained possession or control of the Wilshire Property after the transfer via WHITING, which Defendant WANG is the sole member, manager, and CEO of;

(c)    the Wilshire Transfer was not disclosed to Plaintiff/concealed from Plaintiff in that title to the Wilshire Property was placed in the name of WHITING who was not a party to the 2013 Loan;

(d)    before the Wilshire Transfer, The FANGS had been threatened with suit (the XMAC Arbitration) due to their obligations under the 2013 Loan;

(e)    The FANGS removed and/or concealed personally owned assets via the Wilshire Transfer in that the assets were transferred to WHITING who was not a party to the 2013 Loan;

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

(f)    there was no exchange of reasonable equivalent value in that the Wilshire Transfer was made without consideration or only nominal consideration given in exchange for the transferred assets;

(g)    the Wilshire Transfer occurred at a time shortly after a substantial debt (the XMAC Award) was incurred; and

(h)    the Wilshire Transfer was made for less than reasonably equivalent value at a time when The FANGS knew or should have known that it had unreasonably small capital remaining to pay its debts, including but not limited to their obligations pursuant to the 2013 loan, as they became due.

146.    Defendant WHITING did not take the Wilshire Transfer for a reasonably equivalent value and/or did not take said transfer in good faith. Specifically, WHITING (i) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the transfer was of assets personally owned by The FANGS because the transfer was identified as emanating from them; (ii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested the value, if any, provided by it in exchange for said transfer conferred no or less than reasonably equivalent value; and (iii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the value, if any, provided by it in exchange for said transfer was not for the benefit of The FANGS' creditors.   Defendant WHITING possessed such knowledge by virtue of its status as an entity which Defendant WANG is the sole member, manager, and CEO of.  As a result of this status, it had notice of or reasonably should have been put on notice The FANGS' actual fraudulent intent in transferring the Wilshire Property.

147.    Plaintiff did not discover the Wilshire Transfer until late February 2021 because, at all relevant times, The FANGS concealed from one or more of

their creditors, including Plaintiff, that they had made the Wilshire Transfer with the intent to hinder, delay, or defraud one or more of such creditors.  Because at all relevant times, The FANGS had control over their business and financial records, the fraudulent transfer alleged in this claim for relief could not reasonably have been discovered by Plaintiff sooner than one year prior to the filing of this Complaint.

148.  Plaintiff has been injured by the Wilshire Transfer because said transfer put beyond Plaintiff's reach, property that would have been able to be subject to the payment of The FANGS' debt.  Upon information and belief, if the Wilshire Transfer were set aside, the value of the Wilshire Property would support a net recovery for Plaintiff and thus, Plaintiff has been injured by the fraudulent transfer alleged in this claim in the amount of that net recovery since she has been deprived of the ability to satisfy her monetary claim by collecting/attaching/executing on the fraudulently transferred asset.

149.  Plaintiff has also been forced to incur legal fees and costs in filing this action to avoid said transfer.  The fraudulent transfer alleged in this claim for relief was a substantial factor in causing Plaintiff to incur said legal fees and costs.  Accordingly, Plaintiff is entitled to an award of attorneys' fees in the action confirming her arbitral award as well as an award of her attorneys' fees and costs in the instant action.

150.  On information and belief, Defendant WHITING, as the transferee of the fraudulently transferred asset, is a constructive trustee of the fraudulently transferred asset, along with the proceeds therefrom, and is charged with maintaining the fraudulently transferred asset, along with the proceeds therefrom, for the benefits of the creditors of The FANGS, including Plaintiff.

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

151.  Defendant WHITING, as the transferee and constructive trustee of the fraudulently transferred asset, must be enjoined from selling, encumbering, or disposing of the fraudulently transferred asset.

152.  The Wilshire Transfer must therefore be set aside and voided to the extent necessary to satisfy Plaintiff's claim, plus interest, and attorneys' fees and costs associated with the instant action.

153.  The acts of The FANGS and WHITING as described herein are fraudulent, oppressive, malicious, and in conscious disregard of the rights of Plaintiff, designed to harm Plaintiff, all for their own personal financial gain.  As such, Plaintiff is entitled to an award of exemplary and punitive damages to make an example of and punish the transferors and transferee of the fraudulently transferred asset in an amount determined to be just.

## EIGHTH CLAIM FOR RELIEF

### Avoidance of Constructive Voidable Transfer

### under California Civil Code §§ 3439.04, 3439.05, 3439.07, 3439.09

### (Against Defendants FANG and WANG)

### (La Serena Transfer)

154.  Plaintiff hereby incorporates by reference paragraphs 1 through 153 of this Complaint and re-alleges those paragraphs as though set forth in full.

155.  On February 22, 2018, Plaintiff had a right to payment from The FANGS based on the 2013 Loan and while Plaintiff was a Creditor of The FANGS as defined under California Civil Code § 3439.01, The FANGS transferred property to Defendant WANG "as her sole and separate property", including, but not limited to, the La Serena Property.

156.  On information and belief, there was no exchange of reasonable equivalent value in that the La Serena Transfer was made without consideration

or only nominal consideration given to The FANGS in exchange for the transferred asset.

157.   On information and belief, at the time the La Serena Transfer was made:

(a)    The FANGS, and each of them, were engaged in or were about to engage in a business or enter a transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or

(b)    The FANGS, and each of them, intended to incur, debts beyond their ability to pay as they became due; or

(c)    The FANGS, and each of them, believed or reasonably should have believed that they would incur debts beyond their ability to pay as they became due; or

(d)    The FANGS, and each of them, were insolvent at that time or became insolvent as a result of the La Serena transfer.

158.   Defendant WANG did not take the La Serena Transfer for a reasonably equivalent value and/or did not take said transfer in good faith. Specifically, WANG (i) knew or consciously or recklessly chose to ignore facts known to her that strongly suggested that the transfer was of assets personally owned by The FANGS "as community property" because the transfer was identified as emanating from them; (ii) knew or consciously or recklessly chose to ignore facts known to her that strongly suggested the value, if any, provided by her in exchange for said transfer conferred no or less than reasonably equivalent value; and (iii) knew or consciously or recklessly chose to ignore facts known to her that strongly suggested that the value, if any, provided by her in exchange for said transfer was not for the benefit of The FANGS' creditors. Defendant WANG possessed such knowledge by virtue of her ownership of the

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

asset "as community property" prior to the transfer.  As a result, she had notice of or reasonably should have been put on notice of The FANGS' actual fraudulent intent in transferring the La Serena Property.

159.  Plaintiff did not discover the La Serena Transfer until late February 2021 because, at all relevant times, The FANGS concealed from one or more of their creditors, including Plaintiff, that they had made the La Serena Transfer with the intent to hinder, delay, or defraud one or more of such creditors. Because at all relevant times, The FANGS had control over their business and financial records, the fraudulent transfer alleged in this claim for relief could not reasonably have been discovered by Plaintiff sooner than one year prior to the filing of this Complaint.

160.  Plaintiff has been injured by the La Serena Transfer because said transfer put beyond Plaintiff's reach, property that would have been able to be subject to the payment of The FANGS' community debt.  On information and belief, if the La Serena Transfer were set aside, the value of the La Serena Property would support a net recovery for Plaintiff and thus, Plaintiff has been injured by the fraudulent transfer alleged in this claim in the amount of that net recovery since she has been deprived of the ability to satisfy her monetary claim by collecting/attaching/executing on the fraudulently transferred asset.

161.  Plaintiff has also been forced to incur legal fees and costs in filing this action to avoid said transfer.  The fraudulent transfer alleged in this claim for relief was a substantial factor in causing Plaintiff to incur said legal fees and costs.  Accordingly, Plaintiff is entitled to an award of attorneys' fees in the action confirming her arbitral award as well as an award of her attorneys' fees and costs in the instant action.

162.  On information and belief, Defendant WANG, as the transferee of the fraudulently transferred asset, is a constructive trustee of the fraudulently

transferred asset, along with the proceeds therefrom, and is charged with maintaining the fraudulently transferred asset, along with the proceeds therefrom, for the benefits of the creditors of The FANGS, including Plaintiff.

163.  Defendant WANG, as the transferee and constructive trustee of the fraudulently transferred asset, must be enjoined from selling, encumbering, or disposing of the fraudulently transferred asset.

164.  The La Serena Transfer must therefore be set aside and voided to the extent necessary to satisfy Plaintiff's claim, plus interest, and attorneys' fees and costs associated with the instant action.

165.  The acts of The FANGS as described herein are fraudulent, oppressive, malicious, and in conscious disregard of the rights of Plaintiff, designed to harm Plaintiff, all for their own personal financial gain.  As such, Plaintiff is entitled to an award of exemplary and punitive damages to make an example of and punish the transferors and transferee of the fraudulently transferred asset in an amount determined to be just.

### NINTH CLAIM FOR RELIEF

**Avoidance of Constructive Voidable Transfer**

**under California Civil Code §§ 3439.04, 3439.05, 3439.07, 3439.09**

**(Against Defendants FANG, WANG, and WHITING)**

**(Wilshire Transfer)**

166.  Plaintiff hereby incorporates by reference paragraphs 1 through 165 of this Complaint and re-alleges those paragraphs as though set forth in full.

167.  On information and belief, on or about December 14, 2020, Plaintiff had a right to payment from The FANGS based on the 2013 Loan and while Plaintiff was a Creditor of The FANGS as defined under California Civil Code § 3439.01, The FANGS transferred personal financial assets—including but not limited to the 2013 Loan proceeds and other cash, which would have been

subject to enforcement of, and could have been used to satisfy a portion of, Plaintiff's claim—to WHITING.

168. On information and belief, on or about December 14, 2020, The FANGS caused some or all of those financial assets to be used to purchase the Wilshire Property and caused title to it to be placed in the name of WHITING, without receiving a reasonably equivalent value in exchange for the transfer and for the express purpose of preventing Plaintiff from reaching those financial assets in order to satisfy her claim, and thereafter caused the deed related to the transfer to be recorded on December 23, 2020.

169. On information and belief, there was no exchange of reasonable equivalent value in that the Wilshire Transfer was made without consideration or only nominal consideration given to The FANGS in exchange for the transferred asset.

170. On information and belief, at the time the Wilshire Transfer was made:

(a)   The FANGS, and each of them, were engaged in or were about to engage in a business or enter a transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or

(b)   The FANGS, and each of them, intended to incur, debts beyond their ability to pay as they became due; or

(c)   The FANGS, and each of them, believed or reasonably should have believed that they would incur debts beyond their ability to pay as they became due; or

(d)   The FANGS, and each of them, were insolvent at that time or became insolvent as a result of the Wilshire transfer.

171.   Defendant WHITING did not take the Wilshire Transfer for a reasonably equivalent value and/or did not take said transfer in good faith. Specifically, WHITING (i) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the transfer was of assets personally owned by The FANGS because the transfer was identified as emanating from them; (ii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested the value, if any, provided by it in exchange for said transfer conferred no or less than reasonably equivalent value; and (iii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the value, if any, provided by it in exchange for said transfer was not for the benefit of The FANGS' creditors.   Defendant WHITING possessed such knowledge by virtue of its status as an entity which Defendant WANG is the sole member, manager, and CEO of.  As a result of this status, it had notice of or reasonably should have been put on notice of The FANGS' actual fraudulent intent in transferring the Wilshire Property.

172.   Plaintiff did not discover the Wilshire Transfer until late February 2021 because, at all relevant times, The FANGS concealed from one or more of their creditors, including Plaintiff, that they had made the Wilshire Transfer with the intent to hinder, delay, or defraud one or more of such creditors.  Because at all relevant times, The FANGS had control over their business and financial records, the fraudulent transfer alleged in this claim for relief could not reasonably have been discovered by Plaintiff sooner than one year prior to the filing of this Complaint.

173.   Plaintiff has been injured by the Wilshire Transfer because said transfer put beyond Plaintiff's reach, property that would have been able to be subject to the payment of Defendant FANG's and Defendant WANG's debt. Upon information and belief, if the Wilshire Transfer were set aside, the value of

**COMPLAINT**

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

the Wilshire Property would support a net recovery for Plaintiff and thus, Plaintiff has been injured by the fraudulent transfer alleged in this claim in the amount of that net recovery since she has been deprived of the ability to satisfy her monetary claim by collecting/attaching/executing on the fraudulently transferred asset.

174.  Plaintiff has also been forced to incur legal fees and costs in filing this action to avoid said transfer.  The fraudulent transfer alleged in this claim for relief was a substantial factor in causing Plaintiff to incur said legal fees and costs.  Accordingly, Plaintiff is entitled to an award of attorneys' fees in the action confirming her arbitral award as well as an award of her attorneys' fees and costs in the instant action.

175.  On information and belief, Defendant WHITING, as the transferee of the fraudulently transferred asset, is a constructive trustee of the fraudulently transferred asset, along with the proceeds therefrom, and is charged with maintaining the fraudulently transferred asset, along with the proceeds therefrom, for the benefits of the creditors of , including Plaintiff.

176.  Defendant WHITING, as the transferee and constructive trustee of the fraudulently transferred asset, must be enjoined from selling, encumbering, or disposing of the fraudulently transferred asset.

177.  The Wilshire Transfer must therefore be set aside and voided to the extent necessary to satisfy Plaintiff's claim, plus interest, and attorneys' fees and costs associated with the instant action.

178. The acts of The FANGS and WHITING as described herein are fraudulent, oppressive, malicious, and in conscious disregard of the rights of Plaintiff, designed to harm Plaintiff, all for their own personal financial gain.  As such, Plaintiff is entitled to an award of exemplary and punitive damages to

make an example of and punish the transferors and transferee of the fraudulently transferred asset in an amount determined to be just.

**TENTH CLAIM FOR RELIEF**

**Common Law Fraudulent Transfer**

**(Against all Defendants)**

**(All Transfers)**

179.  Plaintiff hereby incorporates by reference paragraphs 1 through 178 of this Complaint and re-alleges those paragraphs as though set forth in full.

180.  Within the last six years, Plaintiff had a right to payment from The FANGS based on the 2013 Loan and while Plaintiff was a Creditor of The FANGS as defined under California Civil Code § 3439.01, The FANGS transferred their personally owed assets to the other defendants including: (a) multiple real properties located in California (Via Romero Transfer, Appalachian Transfer, Henrietta Transfer, Eisenhower Transfer, and La Serena Transfer); and (b) the 2013 Loan proceeds and other cash which were used to purchase other real properties located in California (Parthenia Transfer and Wilshire Transfer).  The Via Romero Transfer, Appalachian Transfer, Henrietta Transfer, Eisenhower Transfer, La Serena Transfer, Parthenia Transfer, and Wilshire Transfer are collectively referred to hereinafter as the "Six-year Transfers".

181.  On information and belief, the Six-year Transfers, and each of them, were not accompanied by an immediate delivery followed by an actual and continued change of possession of the property.

182.  On information and belief, the Six-year Transfers, and each of them, were illegal in that there were no exchanges of reasonable equivalent value, in that the Six-year Transfers, and each of them, were made without consideration or only nominal consideration given to The FANGS in exchange for the transferred assets.

183.  On information and belief, the Six-year Transfers, and each of them, were illegal in that the Six-year Transfers, and each of them, were undertaken with the intent of preventing Plaintiff from reaching those assets in order to satisfy her claim against The FANGS or with the express purpose of frustrating and hindering the collection efforts of Plaintiff and other creditors.

184.  Defendants WANG, SERENA, PARTHENIA, and WHITING ("Transferee Defendants") did not take the Six-year Transfers, and each of them, for a reasonably equivalent value and/or did not take said transfers in good faith. Specifically, Transferee Defendants (i) knew or consciously or recklessly chose to ignore facts known to him/her/it that strongly suggested that the transfer was of assets personally owned by The FANGS because the transfer was identified as emanating from them; (ii) knew or consciously or recklessly chose to ignore facts known to him/her/it that strongly suggested the value, if any, provided by him/her/it in exchange for said transfer conferred no or less than reasonably equivalent value; and (iii) knew or consciously or recklessly chose to ignore facts known to him/her/it that strongly suggested that the value, if any, provided by him/her/it in exchange for said transfer was not for the benefit of The FANGS' creditors.  Transferee Defendants possessed such knowledge by virtue of their close business and/or familial relationships with The FANGS.  As a result of these relationships, him/her/it had notice of or reasonably should have been put on notice of The FANGS' actual fraudulent intent in making the Six-year Transfers, and each of them.

185.  Plaintiff did not discover the Six-year Transfers, and each of them, until late February 2021 because, at all relevant times, The FANGS concealed from one or more of their creditors, including Plaintiff, that they had made the Six-year Transfers, and each of them, with the intent to hinder, delay, or defraud one or more of such creditors.  Because at all relevant times, The FANGS had

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

control over their business and financial records, the fraudulent transfers alleged in this claim for relief could not reasonably have been discovered by Plaintiff sooner than one year prior to the filing of this Complaint.

186.   Plaintiff has been injured by the Six-year Transfers because said transfers put beyond Plaintiff's reach, property that would have been able to be subject to the payment of The FANGS' debt.   On information and belief, if the Six-year Transfers were set aside, the value of the properties involved in the Six-year Transfers, and each of them, would support a net recovery for Plaintiff and thus, Plaintiff has been injured by the fraudulent transfers alleged in this claim in the amount of that net recovery since she has been deprived of the ability to satisfy her monetary claim by collecting/attaching/executing on the fraudulently transferred assets.

187.   Plaintiff has also been forced to incur legal fees and costs in filing this action to avoid said transfer.   The fraudulent transfer alleged in this claim for relief was a substantial factor in causing Plaintiff to incur said legal fees and costs.   Accordingly, Plaintiff is entitled to an award of attorneys' fees in the action confirming her arbitral award as well as an award of her attorneys' fees and costs in the instant action.

188.   As a proximate result and consequence of The FANGS' wrongful conduct including, but not limited to, The FANGS' efforts to hinder, delay and defraud Plaintiff from reaching the fraudulently transferred assets alleged in this claim in order to satisfy her claim against The FANGS, and the resulting delay in satisfaction of said claim, Plaintiff has suffered consequential damages, including but not limited to, loss of use of the withheld claim money including money constituting the 2013 Loan principal and interest to which Plaintiff is entitled, losses to Plaintiff due to diminished ability to fund and capitalize her businesses resulting in the loss of employees, clients, and business prospects,

losses to Plaintiff due to diminished credit scores and credit, losses to Plaintiff due to increased financing fees, and more, all in an amount to be proven at trial.

189.   On information and belief, Transferee Defendants, as the transferees of the fraudulently transferred assets, are constructive trustees of the fraudulently transferred assets, along with the proceeds therefrom, and are charged with maintaining the fraudulently transferred assets, along with the proceeds therefrom, for the benefits of the creditors of The FANGS, including Plaintiff.

190.   Transferee Defendants, as the transferees and constructive trustees of the fraudulently transferred assets, must be enjoined from selling, encumbering, or disposing of the fraudulently transferred assets.

191.   The Six-year Transfers, and each of them, must therefore be set aside and voided to the extent necessary to satisfy Plaintiff's claim, plus interest, and attorneys' fees and costs associated with the instant action.

192.   The acts of The FANGS and Transferee Defendants as described herein are fraudulent, oppressive, malicious, and in conscious disregard of the rights of Plaintiff, designed to harm Plaintiff, all for their own personal financial gain.   As such, Plaintiff is entitled to an award of exemplary and punitive damages to make an example of and punish the transferors and transferee of the fraudulently transferred asset in an amount determined to be just.

## ELEVENTH CLAIM FOR RELIEF
### Conspiracy to Commit Fraud
### (Against all Defendants)

193.   Plaintiff hereby incorporates by reference paragraphs 1 through 192 of this Complaint and re-alleges those paragraphs as though set forth in full.

194.   On information and belief, The FANGS and Transferee Defendants, and each of them, entered into an agreement and/or understanding, and

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

otherwise formed and operated a conspiracy with one another to conspire to fraudulently transfer to The FANGS personally and indirectly owned assets including the Six-year Transfers, and each of them, in order to prevent Plaintiff from reaching those assets in order to satisfy her claim against The FANGS.

195.  On information and belief, in furtherance of the conspiracy and agreement alleged above, immediately before each of the transfers involved in the Six-year Transfers occurred, and during the time when the Transferee Defendants knew of The FANGS' indebtness on Plaintiff's claim, The FANGS and Transferee Defendants, and each of them, were aware that The FANGS, and each of them, planned to wrongfully and/or fraudulently transfer assets to hinder, delay, or defraud Plaintiff and agreed to join in the wrongful transfers. The FANGS and Transferee Defendants, and each of them, intended that the wrongful and/or fraudulent transfers be committed in that they agreed and intended that The FANGS, and each of them, would transfer the assets without consideration or with only nominal consideration given for the transferred assets, in order to avoid detection by Plaintiff and in order to prevent Plaintiff from reaching those assets in order to satisfy her claim against The FANGS.  The FANGS and Transferee Defendants, and each of them, came to the agreement by virtue of their familial relationship with The FANGS and/or their status as business entities wholly owned, operated, and/or controlled by Defendant FANG and/or Defendant WANG.

196.  On information and belief, Transferee Defendants, and each of them, did in fact receive assets without consideration or with only nominal consideration given for the transferred assets in furtherance of the fraud upon Plaintiff and the above-referenced conspiracy.

197.  As a direct and proximate result of The FANGS and Transferee Defendants, and each of them, tortious acts committed in furtherance of the

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

above-referenced conspiracy, Plaintiff has suffered substantial damages and is entitled to the relief sought herein.

198. As a proximate result and consequence of the conduct of The FANGS and Transferee Defendants, and each of them, Plaintiff has suffered damages in an amount to be proven at trial.

199. Plaintiff has been harmed by the conspiracy to commit fraudulent transfers alleged in this claim by being deprived of the ability to satisfy her monetary claim by collecting/attaching/executing on the fraudulently transferred assets. Plaintiff has also been forced to incur legal fees and costs in filing this action to avoid said transfers. The fraudulent transfers alleged in this claim for relief were a substantial factor in causing Plaintiff harm and in causing Plaintiff to incur said legal fees and costs. Accordingly, Plaintiff is entitled to an award of attorneys' fees in the action confirming her arbitral award as well as an award of her attorneys' fees and costs in the instant action.

200. At all times mentioned herein, The FANGS and Transferee Defendants, and each of them, knew of Plaintiff's claim against The FANGS and knew that Plaintiff's claim could be satisfied only out of The FANGS' interests in the fraudulently transferred assets alleged in this claim. Notwithstanding this knowledge, The FANGS and Transferee Defendants, and each of them, intentionally, willfully, fraudulently, and maliciously did the things alleged herein to defraud and oppress Plaintiff. The conduct of The FANGS and Transferee Defendants, and each of them, was perpetrated with actual malice and ill will toward Plaintiff, and with the intentional and improper purpose of causing damage to Plaintiff. There was no justifiable cause for said actions. As a result, an award of punitive damages is warranted.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

For the First Claim For Relief (Actual Voidable Transfer)

1.     For an order from this Court that the Via Romero Transfer be set aside and voided in the amount of at least $16,862,245.80 USD (the USD equivalent of Plaintiff's XMAC Award amount of at least ¥110,742,800 Yuan based on the April 2, 2021 currency exchange rate of 1 RMB to 0.15 USD) or to the extent otherwise necessary to satisfy Plaintiff's claim against The FANGS;

2.     For an order enjoining the transferee of the Via Romero Property from selling, encumbering, or disposing of the transferred asset;

3.     For a temporary restraining order, preliminary injunction, and/or injunction enjoining and restraining Defendants, their agents, representatives, and attorneys from transferring, selling, conveying, assigning, or otherwise disposing of the Via Romero Property and benefits obtained or proceeds of same or from making any further claim to the Via Romero Property adverse to Plaintiff, whether by legal action or otherwise;

4.     For an order declaring that the transferee of the Via Romero Property is a constructive trustee of the voidable transferred asset and benefits obtained, or proceeds of same, including rents from the Via Romero Property, and demanding the transferee to disgorge and turnover same to Plaintiff;

5.     For punitive and exemplary damages in an amount determined to be just to make an example of and punish The FANGS and SERENA;

6.     For an award of attorneys' fees and costs according to proof; and

7.     For such further relief as the Court considers proper.

For the Second Claim For Relief (Actual Voidable Transfer)

1.     For an order from this Court that the Appalachian Transfer be set aside and voided in the amount of at least $16,862,245.80 USD (the USD

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

equivalent of Plaintiff's XMAC Award amount of at least ¥110,742,800 Yuan based on the April 2, 2021 currency exchange rate of 1 RMB to 0.15 USD) or to the extent otherwise necessary to satisfy Plaintiff's claim against The FANGS;

2.      For an order enjoining the transferee of the Appalachian Property from selling, encumbering, or disposing of the transferred asset;

3.      For a temporary restraining order, preliminary injunction, and/or injunction enjoining and restraining Defendants, their agents, representatives, and attorneys from transferring, selling, conveying, assigning, or otherwise disposing of the Appalachian Property and benefits obtained or proceeds of same or from making any further claim to the Appalachian Property adverse to Plaintiff, whether by legal action or otherwise;

4.      For an order declaring that the transferee of the Appalachian Property is a constructive trustee of the voidable transferred asset and benefits obtained, or proceeds of same, including rents from the Appalachian Property, and demanding the transferee to disgorge and turnover same to Plaintiff;

5.      For punitive and exemplary damages in an amount determined to be just to make an example of and punish The FANGS and SERENA;

6.      For an award of attorneys' fees and costs according to proof; and

7.      For such further relief as the Court considers proper.

For the Third Claim For Relief (Actual Voidable Transfer)

1.      For an order from this Court that the Henrietta Transfer be set aside and voided in the amount of at least $16,862,245.80 USD (the USD equivalent of Plaintiff's XMAC Award amount of at least ¥110,742,800 Yuan based on the April 2, 2021 currency exchange rate of 1 RMB to 0.15

USD) or to the extent otherwise necessary to satisfy Plaintiff's claim against The FANGS;

2.      For an order enjoining the transferee of the Henrietta Property from selling, encumbering, or disposing of the transferred asset;

3.      For a temporary restraining order, preliminary injunction, and/or injunction enjoining and restraining Defendants, their agents, representatives, and attorneys from transferring, selling, conveying, assigning, or otherwise disposing of the Henrietta Property and benefits obtained or proceeds of same or from making any further claim to the Henrietta Property adverse to Plaintiff, whether by legal action or otherwise;

4.      For an order declaring that the transferee of the Henrietta Property is a constructive trustee of the voidable transferred asset and benefits obtained, or proceeds of same, including rents from the Henrietta Property, and demanding the transferee to disgorge and turnover same to Plaintiff;

5.      For punitive and exemplary damages in an amount determined to be just to make an example of and punish The FANGS and SERENA;

6.      For an award of attorneys' fees and costs according to proof; and

7.      For such further relief as the Court considers proper.

For the Fourth Claim For Relief (Actual Voidable Transfer)

1.      For an order from this Court that the Eisenhower Transfer be set aside and voided in the amount of at least $16,862,245.80 USD (the USD equivalent of Plaintiff's XMAC Award amount of at least ¥110,742,800 Yuan based on the April 2, 2021 currency exchange rate of 1 RMB to 0.15 USD) or to the extent otherwise necessary to satisfy Plaintiff's claim against The FANGS;

**COMPLAINT**

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

2.      For an order enjoining the transferee of the Eisenhower Property from selling, encumbering, or disposing of the transferred asset;

3.      For a temporary restraining order, preliminary injunction, and/or injunction enjoining and restraining Defendants, their agents, representatives, and attorneys from transferring, selling, conveying, assigning, or otherwise disposing of the Eisenhower Property and benefits obtained or proceeds of same or from making any further claim to the Eisenhower Property adverse to Plaintiff, whether by legal action or otherwise;

4.      For an order declaring that the transferee of the Eisenhower Property is a constructive trustee of the voidable transferred asset and benefits obtained, or proceeds of same, including rents from the Eisenhower Property, and demanding the transferee to disgorge and turnover same to Plaintiff;

5.      For punitive and exemplary damages in an amount determined to be just to make an example of and punish The FANGS and SERENA;

6.      For an award of attorneys' fees and costs according to proof; and

7.      For such further relief as the Court considers proper.

For the Fifth Claim For Relief (Actual Voidable Transfer)

1.      For an order from this Court that the La Serena Transfer be set aside and voided in the amount of at least $16,862,245.80 USD (the USD equivalent of Plaintiff's XMAC Award amount of at least ¥110,742,800 Yuan based on the April 2, 2021 currency exchange rate of 1 RMB to 0.15 USD) or to the extent otherwise necessary to satisfy Plaintiff's claim against The FANGS;

2.      For an order enjoining the transferee of the La Serena Property from selling, encumbering, or disposing of the transferred asset;

**COMPLAINT**

3.     For a temporary restraining order, preliminary injunction, and/or injunction enjoining and restraining Defendants, their agents, representatives, and attorneys from transferring, selling, conveying, assigning, or otherwise disposing of the La Serena Property and benefits obtained or proceeds of same or from making any further claim to the La Serena Property adverse to Plaintiff, whether by legal action or otherwise;

4.     For an order declaring that the transferee of the La Serena Property is a constructive trustee of the voidable transferred asset and benefits obtained, or proceeds of same, including rents from the La Serena Property, and demanding the transferee to disgorge and turnover same to Plaintiff;

5.     For punitive and exemplary damages in an amount determined to be just to make an example of and punish The FANGS;

6.     For an award of attorneys' fees and costs according to proof; and

7.     For such further relief as the Court considers proper.

For the Sixth Claim For Relief (Actual Voidable Transfer)

1.     For an order from this Court that the Parthenia Transfer be set aside and voided in the amount of at least $16,862,245.80 USD (the USD equivalent of Plaintiff's XMAC Award amount of at least ¥110,742,800 Yuan based on the April 2, 2021 currency exchange rate of 1 RMB to 0.15 USD) or to the extent otherwise necessary to satisfy Plaintiff's claim against The FANGS;

2.     For an order enjoining the transferee of the Parthenia Property from selling, encumbering, or disposing of the transferred asset;

3.     For a temporary restraining order, preliminary injunction, and/or injunction enjoining and restraining Defendants, their agents, representatives, and attorneys from transferring, selling, conveying,

assigning, or otherwise disposing of the Parthenia Property and benefits obtained or proceeds of same or from making any further claim to the Parthenia Property adverse to Plaintiff, whether by legal action or otherwise;

4.      For an order declaring that the transferee of the Parthenia Property is a constructive trustee of the voidable transferred asset and benefits obtained, or proceeds of same, including rents from the Parthenia Property, and demanding the transferee to disgorge and turnover same to Plaintiff;

5.      For punitive and exemplary damages in an amount determined to be just to make an example of and punish The FANGS and PARTHENIA;

6.      For an award of attorneys' fees and costs according to proof; and

7.      For such further relief as the Court considers proper.

For the Seventh Claim For Relief (Actual Voidable Transfer)

1.      For an order from this Court that the Wilshire Transfer be set aside and voided in the amount of at least $16,862,245.80 USD (the USD equivalent of Plaintiff's XMAC Award amount of at least ¥110,742,800 Yuan based on the April 2, 2021 currency exchange rate of 1 RMB to 0.15 USD) or to the extent otherwise necessary to satisfy Plaintiff's claim against The FANGS;

2.      For an order enjoining the transferee of the Wilshire Property from selling, encumbering, or disposing of the transferred asset;

3.      For a temporary restraining order, preliminary injunction, and/or injunction enjoining and restraining Defendants, their agents, representatives, and attorneys from transferring, selling, conveying, assigning, or otherwise disposing of the Wilshire Property and benefits

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

**COMPLAINT**

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

obtained or proceeds of same or from making any further claim to the Wilshire Property adverse to Plaintiff, whether by legal action or otherwise;

4.     For an order declaring that the transferee of the Wilshire Property is a constructive trustee of the voidable transferred asset and benefits obtained, or proceeds of same, including rents from the Wilshire Property, and demanding the transferee to disgorge and turnover same to Plaintiff;

5.     For punitive and exemplary damages in an amount determined to be just to make an example of and punish The FANGS and WHITING;

6.     For an award of attorneys' fees and costs according to proof; and

7.     For such further relief as the Court considers proper.

For the Eighth Claim For Relief (Constructive Voidable Transfer)

1.     For an order from this Court that the La Serena Transfer be set aside and voided in the amount of at least $16,862,245.80 USD (the USD equivalent of Plaintiff's XMAC Award amount of at least ¥110,742,800 Yuan based on the April 2, 2021 currency exchange rate of 1 RMB to 0.15 USD) or to the extent otherwise necessary to satisfy Plaintiff's claim against The FANGS;

2.     For an order enjoining the transferee of the La Serena Property from selling, encumbering, or disposing of the transferred asset;

3.     For a temporary restraining order, preliminary injunction, and/or injunction enjoining and restraining Defendants, their agents, representatives, and attorneys from transferring, selling, conveying, assigning, or otherwise disposing of the La Serena Property and benefits obtained or proceeds of same or from making any further claim to the La Serena Property adverse to Plaintiff, whether by legal action or otherwise;

4.     For an order declaring that the transferee of the La Serena Property is a constructive trustee of the voidable transferred asset and benefits

obtained, or proceeds of same, including rents from the La Serena Property, and demanding the transferee to disgorge and turnover same to Plaintiff;

5.      For punitive and exemplary damages in an amount determined to be just to make an example of and punish The FANGS;

6.      For an award of attorneys' fees and costs according to proof; and

7.      For such further relief as the Court considers proper.

For the Ninth Claim For Relief (Constructive Voidable Transfer)

1.      For an order from this Court that the Wilshire Transfer be set aside and voided in the amount of at least $16,862,245.80 USD (the USD equivalent of Plaintiff's XMAC Award amount of at least ¥110,742,800 Yuan based on the April 2, 2021 currency exchange rate of 1 RMB to 0.15 USD) or to the extent otherwise necessary to satisfy Plaintiff's claim against The FANGS;

2.      For an order enjoining the transferee of the Wilshire Property from selling, encumbering, or disposing of the transferred asset;

3.      For a temporary restraining order, preliminary injunction, and/or injunction enjoining and restraining Defendants, their agents, representatives, and attorneys from transferring, selling, conveying, assigning, or otherwise disposing of the Wilshire Property and benefits obtained or proceeds of same or from making any further claim to the Wilshire Property adverse to Plaintiff, whether by legal action or otherwise;

4.      For an order declaring that the transferee of the Wilshire Property is a constructive trustee of the voidable transferred asset and benefits obtained, or proceeds of same, including rents from the Wilshire Property, and demanding the transferee to disgorge and turnover same to Plaintiff;

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

Law Offices of Sam X.J. Wu, APC, 8600 Utica Ave., Bldg. 100, Rancho Cucamonga, CA 91730

5.    For punitive and exemplary damages in an amount determined to be just to make an example of and punish The FANGS and WHITING;

6.    For an award of attorneys' fees and costs according to proof; and

7.    For such further relief as the Court considers proper.

For the Tenth Claim For Relief (Common Law Fraudulent Transfer)

1.    For an order from this Court that the Six-year Transfers be set aside and voided in the amount of at least $16,862,245.80 USD (the USD equivalent of Plaintiff's XMAC Award amount of at least ¥110,742,800 Yuan based on the April 2, 2021 currency exchange rate of 1 RMB to 0.15 USD) or to the extent otherwise necessary to satisfy Plaintiff's claim against The FANGS;

2.    For an order enjoining the Transferee Defendants from selling, encumbering, or disposing of the transferred assets;

3.    For a temporary restraining order, preliminary injunction, and/or injunction enjoining and restraining Defendants, their agents, representatives, and attorneys from transferring, selling, conveying, assigning, or otherwise disposing of the fraudulently transferred assets and benefits obtained or proceeds of same or from making any further claim to the fraudulently transferred assets adverse to Plaintiff, whether by legal action or otherwise;

4.    For an order declaring that the Transferee Defendants are constructive trustees of the fraudulently transferred assets and benefits obtained, or proceeds of same, including rents from them, and demanding the Transferee Defendants to disgorge and turnover same to Plaintiff;

5.    For punitive and exemplary damages in an amount determined to be just to make an example of and punish The FANGS and the Transferee Defendants;

**COMPLAINT**

6.      For an award of attorneys' fees and costs according to proof; and

7.      For such further relief as the Court considers proper.

For the Eleventh Claim For Relief (Conspiracy to Commit Fraud)

1.      For general, special and consequential damages in a sum not yet fully ascertained and according to proof at trial;

2.      For an award of attorneys' fees and costs according to proof;

3.      For punitive and exemplary damages in an amount determined to be just to make an example of and punish The FANGS and the Transferee Defendants; and

4.      For such further relief as the Court considers proper.


Dated: February 3, 2022                    **LAW OFFICES OF SAM X.J. WU, APC**

SAM X.J. WU
JAMIE R. SCHLOSS
MIGUEL A. INIGUEZ
Attorneys for Plaintiff, Junping Ma